I'm from the Detroit area and flying out here last night I was looking at this file in the briefs and whatnot which were filed about a year and a half ago and I'm looking at I'm saying what's good what am I doing here there's not that much money involved in this appeal I read through them once and I read through them again then it came back to me what this is all about and this this is more or less a public policy type of appeal that has to do with the practice that's ongoing in Alaska with regard to food or fish processors systematically placing crew members covered under the Jones Act under the Alaska state workers compensation proceeding or system and then them being systematically deprived of their general maritime law in this case the issues all have to do with the failure to make a prompt payment of maintenance and cure. Judge Beam you wrote with regard to there being a duty to pay maintenance and cure and Judge Reimer you wrote and that was in the Stanislavski case Judge Reimer you wrote extensively in the Glynn case about there's supposed to be prompt payment of can be given rise to because of the failure to make a prompt payment of maintenance and cure and in this case there was not a prompt payment of maintenance and cure and in three instances and it's irrefutable that for many months even though the plaintiff was undergoing a painful knee condition her treating doctor was requesting authorization for surgery and MRI that he received no authorization for surgery for an MRI for many months after it was first requested because of the defendant was shuffling the plaintiff through the Alaska workers compensation system which is totally inapplicable. What seems strange to me however counsel was while she was receiving physical therapy her condition actually improved during that time isn't that right? This was many months after the initial request for MRI and surgery had taken place that was in December there's some records to that effect. I guess that would go to the question of aggravation for the delay. I think that would be a question of fact but the situation is you can have compensable damages because of the aggravation of an underlying condition or the prolongation of pain and suffering. The difficulty with assuming you're right is that at least in the record before the district court that's not the theory in which he proceeded and that's the rub. That was the cause of action that was alleged in the complaint? Well no what the complaint alleges is that aggravation resulted. Correct and then the discovery responses were updated to include the aggravation and the prolongation of symptomology and that's the prolongation of pain and suffering. Well yeah but at summary judgment you are you know put to the put to the test and what I mean I just don't know how reading the record and summary judgment the district court could get the impression that what you're talking about is damages for some kind of prolongation of pain and suffering. I mean there's no declaration from her. There's no argument made about that. The only evidence of it is just common sense. I mean I guess that if you wait several months and your knee hurts it's going to maybe several weeks. I mean common sense suggests that but there was no pitch made. The response in opposition to summary judgment argued that there was a prolongation of pain and suffering because of delayed payment of maintenance and cure which was evidenced by Dr. Peterson's repeated records of visits and prolonged pain and suffering and requests for MRI authorization going unheeded. So that was a basis a primary basis of our opposition to the motion for summary judgment. Well okay. With regard to the aggravation of the underlying condition the question becomes whether the Dr. Peterson testifying that her prognosis was worse because of the prolongation of obtaining authorization whether that creates a question of fact. Well he didn't say anything. I mean he said I don't know. I have nothing to say on that. I mean I can guess. I think that the workers comp board treats people terribly. He was asked whether the delay in receiving authorization for the MRI and surgery negatively affected her prognosis. He says yeah but I can't prove it. Correct. I don't know. I mean. Well what his conception of proof is basically not in the record but his opinion was yes it did negatively affect her. But the primary thrust of this lawsuit and the primary thrust of our opposition to summary judgment was that she withstood a prolonged period of pain and suffering because of the failure of the defendant to authorize. Let me ask you a couple questions if I may because I couldn't get on to pace or I was having trouble. She did not put on an affidavit at all right? Correct. I mean she didn't put on any she didn't put any declaration in. True. Okay. Was the I'm sorry the doctor's a deposition put into the record? Oh yeah. Oh yeah it's all in the record and her deposition is in the record. Yeah okay. And finally with regard to the delayed the extremely delayed payment of unearned wages and maintenance of almost one year that the question becomes is an individual having to go on welfare food stamps going to a welfare doctor and the like sufficient evidence to infer that that individual. There's no evidence of that. I mean there's no evidence that that caused her any problem at all. Now it may again common sense may tell you that somebody would be pretty upset by that but but there's no she could have put on a declaration. She didn't. Well we're relying on common knowledge or common sense what would typically occur with regard to something like that. Okay. Thank you and I'll reserve the rest for a moment. Sure. Good morning may it please the court my name is Kara Hickel I represent Icicle Seafoods. The only issue as you recognize three years after the making and dropping of multiple claims is whether the plaintiff raised a triable issue of fact with respect to a compensatory damage claim for a limited period of time after maintenance and cure was clarified. This was raised as an issue for the first time in the opposition to the summary judgment motion. The district court property. Why excuse me why wouldn't that be sufficient? It it never allowed us an opportunity to explore this in discovery in terms of either deposition of the plaintiff or the doctors. It was not the theme and an idea of what we were looking at in terms of. I understand that but did you ask did you object and say we've had no opportunity to explore this? We didn't given the fact ultimately that we argued there was no evidence of additional damage as a result of of any alleged delay and therefore compensatory damages were not demonstrated. So we argued a lack of proof even given this new issue that was raised and the district court agreed with that. Is there anything in the circuit that prevents us from considering common sense? Common sense is I guess. You don't pay me when I need the payment. You wait months and months and months to pay me. Can't we assume that that causes suffering? No. There still needs to be evidence. The basic concept of tort law is there has to be wrongdoing and damage. Both of those are required here. There is no additional damage demonstrated. The damage is another question but the argument is in the response and summary judgment that the delay did cause suffering. Quad delay just because of the delay. And the proof of damage associated with that claim. You can't survive summary judgment speculating. I would argue you can't rely on common sense. You have to put evidence before the court sufficient to survive summary judgment. And that evidence would have had to have been a declaration of some kind? Yes. All right. I'd like to address very briefly one of the plaintiff's opening statements about the illegal systemic practice of disenfranchising seafood processors. I don't believe this issue was before the district court. The jurisdiction of the Alaska Workers Comp Board was not specifically argued there. I did cite two various Alaska statutes defining commercial fishermen which are exempted from the act but not processors. I would direct this court to the Huseman decision of the Ninth Circuit from December of 2006, 04-35655. There was an argument made there that employers like ICICL, subject to dual jurisdiction, both Alaska Workers Comp and Federal Maritime Remedies, must advise seafood processors on both those remedies. The Ninth Circuit found ICICL was required to make a report to the state of Alaska for processors. It was not fraudulent or misleading to comply with Alaska law on this. And the employer was under no obligation to advise processors of their various remedies under both those jurisdictions. Again, my belief is that issue is not before you. I'd also like to reference, because it's been at least danced around in the briefing here, the applicable standard in the Ninth Circuit for compensatory damages for failure to pay maintenance and cure. The facts surrounding the delay were argued to the district court but the standard itself was not at issue in the summary judgment motion. The plaintiff has conceded that she's not appealing the district court's motion to compel. There's no specific Ninth Circuit case on this. The Glynn Court addressed the only remedy argued in the motion to compel below, which was the attorney fee issue. And again, that is not before this court. The Glynn Court was mindful that under the Supreme Court decision in Vaughan, only attorney fees are available to deter an employer's conduct. The Vaughan decision applied the willful and persistent standard then adopted by the Glynn Court when addressing attorney fees. It made reference to compensatory damages also flowing from a failure to pay maintenance and cure and didn't set a separate standard. The Glynn Court also recognized the more recent pronouncement of the Miles case. U.S. Supreme Courts dictate that courts are not free to expand Siemens remedies at will now that they are congressionally dictated and mandated by the Jones Act. At a minimum, the conduct must be unreasonable under the Morales case in the Fifth Circuit. Notably, the Glynn Court refused to follow Fifth Circuit precedent. It's arguable that the Vaughan standard for policy reasons of willful and persistent would be equally applicable here. But in any event, the plaintiff's argument that there would be no finding of wrongful behavior in order to be entitled to compensatory damages is certainly not the law of this circuit. It isn't the law or the policy set out in Glynn. In fact, there was a separate issue in the Glynn decision. The Glynn Court was asked on a pretrial, whether it was appropriate on a pretrial basis to order the payment of maintenance and cure. And the Glynn Court said no. When there are facts in dispute, similar to the summary judgment standard, on a pretrial basis, in other words, when there is a basic fundamental question as to whether an injury occurred on the vessel, then maintenance and cure would not be appropriate. It's certainly not the policy of Vaughan. Contrary to the Jones Act concepts that now dominate this, and it's really contrary to basic tort law, there has to be wrongdoing. I'd like to briefly address the questions presented by the appellant. The first is whether mental anxiety can be inferred by the fact that she was using welfare and medical coupons. Really, that's an admission that there's no evidence of damage here because we're asked to infer, we're asked to assume circumstances about her financial condition in the absence of this injury. The record could be that in every off season she tapped into welfare benefits. We simply don't have that information and evidence before us. But there's certainly no nexus between her financial condition and this injury. Counsel, what kind of evidence should have been presented in your view in support of this? Again, I believe at a minimum, at a summary judgment stage, would have been a declaration. By detailing her financial situation. You're not demanding expert testimony that this would obviously be... No, and I don't think the cases would support that either. The cases, they're only post-trial cases, but they point to evidence of the plaintiff's testimony. But even though she's talking about mental damages, stress and so forth, her declaration would have been sufficient under existing law. Well, I think that's a separate question. I think I was originally understanding your first question to be her financial circumstances. As to mental stress... Well, it was the financial circumstances that allegedly led to the mental damages, the mental type damages, wasn't it? It... Well, that's the argument made in the briefing. But I think that the plaintiff's testimony or the plaintiff's declaration on things such as, I was without maintenance and cure, so I lost my home, or I had to stop... I couldn't afford treatment. And therefore, the treatment, the lack of treatment, caused some damage. I think that's the second step here, in terms of answering your question. There still has to be damage associated with that. And I think it would be, at a minimum, the plaintiff's declaration. The second question was very... Actually, let me skip very briefly in my time left to the persistent and continued pain. The most analogous case I find to that is the Smith case cited in our briefing, where there was some doctor's testimony of things such as missing medication, or the plaintiff there was not provided. The district court there found, appropriately, again, there was simply no evidence in the record, even with the doctor's testimony, of an aggravation. Thank you. Okay, thank you. Mr. O'Brien. Thank you. I'd just like to reiterate that it was well-plaid that we were seeking damages in the complaint for failure to pay maintenance and cure. And prior to the motion for summary judgment having been filed, we served updated or supplemented interrogatory answers that included the damages for the persistent symptomology, or pain and suffering. And in our response to the summary judgment motion, which is contained on pages 129 and 130 of the excerpts of the record, the court can see that the prolongation of pain and suffering, the standard, the district court never reached the determination whether or not that the defendant had a reasonable defense for its late payment of maintenance and cure, insofar as it only addressed the damages issue. So it's an open question whether in this circuit there would have to be some degree of wrongdoing. But even if there would have to be some degree of wrongdoing with regard to compensatory damages for failure to pay maintenance and cure, or attorney fees for failure to pay maintenance and cure, such as were addressed in the Glynn case. The attorney fee situation caused for a willful or persistent or arbitrary failure to pay maintenance and cure. A higher standard than what's required to obtain compensable damages, which is outlined in the Morales case, the Fifth Circuit case, which addresses a sliding type of scale, where all that a plaintiff or crew member need demonstrate is that the defendant lacked a reasonable defense in its delayed or failure to pay maintenance and cure. And the Hausman case that was referenced by defense counsel, the recent opinion in this circuit, did not address the underlying propriety, whether Alaska workers' compensation jurisdiction exists with regard to crew members on processing vessels. The Jones Act jurisdiction is exclusive, and as this court has repeatedly held in the past, no state is competent to infringe on federal maritime law rights of crew members on vessels. And thank you for your attention. Okay. Before both of you disappear, has this case ever coursed through our mediation process? Not that I'm aware of. Is that something that might make sense? I wrote defense counsel a number of months ago. I don't want to get into details. I mean, I just was raising it because we do have an exceptionally fine process that's available, and it just seems to me that a case of this sort is one that could perhaps benefit from it. But, all right. We would be a willing recipient of any correspondence. Thank you. Matter just argued will be submitted.
judges: Nelson, Rymer, Beam